IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K. JOHN CORRIGAN, M. MARTHA CORRIGAN, HANLEY RANCH PARTNERSHIP, MICHAEL F. HANLEY, IV, AND LINDA LEE HANLEY,<br><br>    Plaintiffs,<br><br>v.<br><br>DAVID L. BERNHARDT, Secretary of the Interior; BRIAN STEED, Acting Director, Bureau of Land Management; JOHN F. RUHS, Idaho State Director, Bureau of Land Management; LARA DOUGLAS, Boise District Manager, Bureau of Land Management; and DONN CHRISTIANSEN, Owyhee Field Manager, Bureau of Land Management,<br><br>    Defendants.<br><br>and<br><br>WESTERN WATERSHEDS PROJECT,<br><br>    Intervenor | Case No. 1:18-CV-512-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it cross-motions for summary judgment. The Court heard oral argument on February 19, 2020, and took the motions under advisement. For the

reasons expressed below, the Court will grant the motions filed by the defendants and intervenors, and deny the motion filed by plaintiffs.

## FACTUAL BACKGROUND

Plaintiffs filed this lawsuit challenging the BLM's cancellation of their grazing preferences on two allotments – known as the Hanley FFR and Trout Springs allotments – on BLM lands in Idaho. This controversy began when BLM concluded that Hanley Ranch had failed to comply with the terms of its grazing permits for many years. *See Corrigan v. BLM*, 190 IBLA 371, 374 (2017); *Hanley Ranch P'ship v. BLM*, 183 IBLA 184, 189-91, 202-07, 211-14 (2013). The BLM found that Hanley Ranch exceeded usage limits, ruined riparian areas, removed vegetation on BLM land without permission, and used pastures closed by the BLM, among other permit violations. *Id.*

Based on these findings, the BLM denied Hanley Ranch's application to renew their grazing permit. Hanley Ranch appealed that decision. In 2011 an Administrative Law Judge granted BLM's motion for summary judgment affirming the BLM's decision to not renew the grazing permit. That decision was affirmed by the Interior Board of Land Appeals (IBLA) on March 12, 2013.

A few months later, Hanley Ranch leased its "base property" – private lands totaling about 1,900 acres – to Martha Corrigan (plaintiff Michael Hanley's daughter) and her husband John Corrigan. The Corrigans then applied to the BLM for a transfer of Hanley Ranch's "grazing preference" and a grazing permit for the Trout Springs and Hanley FFR allotments. The Corrigans argued that even though Hanley Ranch's grazing

permit had been terminated, the grazing preference continued to exist and attached to the base property that the Corrigans now leased.

The BLM disagreed, holding that the termination of the grazing permit also terminated whatever rights Hanley Ranch had to a grazing preference. The Corrigans appealed that decision but it was affirmed by the Interior Board of Land Appeals (IBLA). *Corrigan, supra,* at 375-76, 394. The IBLA explained that under BLM regulations, "grazing preference" does not constitute any kind of "indefinite entitlement" or "property-based right[]," and agreed with BLM that a "grazing preference" does not exist independently of a grazing permit. *Id*. at 388. Consequently, "if a person ceases to be a 'permittee' he or she ceases to control preference." *Id*.

In response, the Hanley Ranch and Corrigans filed this lawsuit under the Administrative Procedures Act (APA) seeking judicial review of the IBLA decision. On the merits of the IBLA decision, the plaintiffs argue that a grazing preference is separate from a grazing permit and that the preference does not disappear just because the permit is denied. As to the remedy, plaintiffs seek reversal of the agency decisions to deny the Corrigan's applications for (1) an approval of the transfer of the preference and (2) a grazing permit.

## ANALYSIS

Congress has passed two statutes that govern the analysis in this case: The Taylor Grazing Act (TGA) passed in 1934, and the Federal Land Policy and Management Act (FLPMA), passed in 1976. Both give an existing permit holder the right to stand first in line when it comes time to renew that permit. This is referred to as a "preference" by the

**Memorandum Decision & Order – page 3**

TGA and a "first priority" by FLPMA. *See* 43 U.S.C. § 315b (TGA); 43 U.S.C. § 1752(c) (FLPMA). No ambiguity results from the different usage because both terms mean the same thing: The existing permit holder stands first in line when seeking to renew his expired permit. Indeed, the regulations use the terms interchangeably: The term "preference" is defined as a "superior or priority position against others for purpose of receiving a grazing permit or lease." *See* 43 C.F.R. § 4100.0-5.

The Supreme Court has made it clear that FLPMA simply carried through the identical "first-in-line" intent of the TGA. In *Pub. Lands Council v. Babbitt,* 529 U.S. 728 (2000), the Supreme Court identified some of the changes FLPMA made to the TGA but then described one of the similarities, stating that FLPMA specified "that existing grazing permits holders would *retain* a 'first priority' for renewal." *Id.* at 738 (emphasis added). In other words, FLPMA's use of the term "first priority" simply retains the meaning of the word "preference" in the TGA. *See generally* 60 Fed.Reg. 9894, 9907 (stating that FLPMA "did not repeal the TGA but did provide additional management direction").

The Court can find no support for plaintiffs' argument that the terms "preference" in the TGA and "first priority" in FLPMA should be interpreted differently, or that one should be ignored. The Court finds that both terms unambiguously mean that the permit holder stands first in line when seeking to renew an expired permit.

The privilege of renewal depends on the permittee being in compliance with the terms of the permit. Under § 1752(c) of FLPMA, an existing permittee, who is "in compliance with the rules and regulations issued and the terms and conditions in the

**Memorandum Decision & Order – page 4**

permit . . . shall be given first priority for receipt of the new permit." *See* 43 U.S.C. § 1752(c). The plain meaning of this provision is that a permittee who fails to comply with the terms of his permit forfeits that priority.

In this case, the BLM found that on numerous occasions Hanley Ranch failed to comply with the terms of its permit. Those findings have not been challenged by plaintiffs in this case and are therefore taken as established facts. Under § 1752(c) Hanley Ranch forfeited its priority.

Hanley Ranch and the Corrigans argue, however, that the priority cannot be automatically forfeited but must be cancelled by the formal process set forth in 43 U.S.C. § 4170.1-1(a). That regulation states that the BLM may "cancel a grazing permit or lease and grazing preference . . . under subpart 4160 of this title, for violation by a permittee or lessee of any of the provisions of this part." Subpart 4160 requires the BLM to provide a written proposed decision to the permit holder and to allow the permit holder to protest the proposed decision.

Plaintiffs argue that the BLM never provided a proposed decision cancelling their preference and never allowed them to protest the cancellation of the preference. This argument assumes that a preference or priority continues to exist after the permit is not renewed. To support their argument that the priority is separate from the permit, plaintiffs cite 43 C.F.R. § 4100.0-5, which states that "[t]his priority is attached to base property owned or controlled by a permittee," and then point out that if the base property is sold, any existing permit held by the permit holder "shall terminate immediately without further notice . . . [but] the grazing preference shall remain with the base property

**Memorandum Decision & Order – page 5**

and be available through application and transfer procedures . . . to the new owner . . . of that base property." *See* 43 C.F.R. § 4110.2-1(d). Plaintiffs argue that this regulatory framework shows that the priority is separate from the permit and continues to exist even after the permit is not renewed.

The Court disagrees for two reasons: (1) These regulations say nothing about nonrenewal – they are only triggered when an *existing permit* is attached to base property being sold; and (2) These regulations state that the permit is immediately terminated without notice when the property is sold, obviously an exception to the requirements of notice and a hearing under § 4160 and § 4170 that plaintiffs are trying to apply here.

What the regulations do mean is that if Hanley Ranch had sold the base property to the Corrigans *while the grazing permit was still in good standing,* the permit would have terminated without notice and the preference would have remained with the base property subject to the BLM's application and transfer procedures. But that is not the situation here. Hanley Ranch did not lose its permit because it sold the property; instead its permit was not renewed at the end of its term because Hanley Ranch failed to comply with the permit's terms. Under FLPMA – § 1752(c) quoted above – a permittee has a preference only so long as he complies with the terms of his permit. The BLM's regulations follow this dictate: "Applicants for the renewal … must be determined by the authorized officer to have a satisfactory record of performance." *See* 43 C.F.R. § 4110.1(b). "The authorized officer will not renew . . . a permit . . . unless the applicant and all affiliates have a satisfactory record of performance." *Id*. § 4130.1-1(b). Unable to renew its permit due to noncompliance, Hanley Ranch no longer stood in a "superior or

**Memorandum Decision & Order – page 6**

priority position against others" in seeking renewal – it had no ability to seek renewal and hence had no preference.

The provisions of § 4160 and § 4170 regarding cancellation never came into play in this case. A preference is not some self-contained privilege that needs to be separately cancelled with notice and a hearing. It is instead a privilege *to renew a permit* – once the permit is not renewed due to noncompliance, the preference disappears at the same moment the permit disappears. There is no need for a separate cancellation process under § 4170.1-1 or subpart 4160. Those regulations say nothing about the nonrenewal of permits due to noncompliance and hence do not govern this case.

Plaintiffs concede that they are not arguing that the "attachment to the base property" language somehow elevates the priority to a property right, and indeed the TGA and FLPMA clearly bar such an argument. *See* 43 U.S.C. § 315b ("the issuance of a permit pursuant to the provisions of this subchapter shall not create any right, title, interest, or estate in or to the lands"); 43 U.S.C. § 1752(h) ("Nothing in this Act shall be construed as modifying in any way law existing on October 21, 1976, with respect to the creation of right, title, interest or estate in or to public lands . . . by issuance of grazing permits . . . .").

The issue in this case is narrow. It is whether a permit holder who is not allowed to renew his permit at the end of its terms due to noncompliance with the permit's terms nevertheless continues to hold a preference that can be transferred to a buyer, allowing that buyer to have a priority over all others is applying for a permit. The Court holds that under the TGA, FLPMA, and the BLM regulations, the preference ceases to exist when

**Memorandum Decision & Order – page 7**

the agency denies the application for renewal due to noncompliance, and no separate notice and opportunity to protest regarding the priority is required. Consequently, the Court cannot find that the IBLA's decision was arbitrary and capricious under the APA.[1] The Court will therefore grant the motions for summary judgment filed by defendants and intervenor WWP, and deny the motion filed by plaintiffs.

### ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment filed by plaintiffs (docket no. 24) is DENIED.

IT IS FURTHER ORDERED, that the motions for summary judgment filed by defendants and intervenors (docket nos. 28 & 29) are GRANTED.

IT IS FURTHER ORDERED, that the Clerk shall close this case.

DATED: February 26, 2020

B. Lynn Winmill
U.S. District Court Judge

---

[1] The Court has found the statutes and regulations unambiguous and gave no deference to the IBLA decision.